UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

BRIAN HOLLENBECK and TISHA
 HOLLENBECK,

                                Plaintiffs,

        v.                                                  5:03-CV-0825
                                                       (LEK/ DEP)

COMEQ, INC.; ROUNDO AB; LUNA AB;
BERGMAN & BEVING AB; LUNA
INTERNATIONAL AB; LUNA SERVICE-
PARTNER AB; LUNA SVERIGE AB; LUNA
VERKTYG & MASKIN AB,

                                Defendants.
_____

LAWRENCE E. KAHN
United States District Judge

**DECISION and ORDER**

Plaintiffs Brian Hollenbeck ("Plaintiff") and Tisha Hollenbeck commenced the instant action seeking to recover for injuries and losses that resulted from Plaintiff's use of a rolling machine allegedly designed, manufactured, distributed, and sold by Defendants. Presently before the Court is Defendants Luna AB ("Luna"), Bergman & Beving AB, Luna International AB ("Luna International"), Luna Sverige AB ("Luna Sverige"), Luna Verktyg & Maskin AB ("Luna Verktyg"), and Luna ServicePartner AB's (collectively "the Foreign Defendants") motion to dismiss pursuant to FED. R. CIV. P. 12(b)(1), 12(b)(2), and 12(b)(6) on the grounds that: (1) the Court lacks subject matter jurisdiction; (2) the Court lacks personal jurisdiction over the Foreign Defendants; and (3) the Complaint fails to state a claim upon which relief can be granted. See Dkt. No. 60. Also before the Court is the Foreign Defendants' Motion for judgment on the pleadings pursuant to Rule 12(c) of the

*Federal Rules of Civil Procedure*; or alternatively, Motion for summary judgment pursuant to Rule 56(c) of the Federal Rules.  See id.

I.     **FACTS**

According to the Second Further Amended Complaint ("Complaint"), on March 28, 2002, Plaintiff was operating a Roundo Rolls Machine Model #110/3 IP Type 8266[1] within the scope of his employment when his hand got caught in the rolling machine.  See Dkt. No. 35, Compl., ¶¶ 55, 82–85.  As a result, Plaintiff sustained certain injuries.  Plaintiff contends that those injuries were caused by a defective and hazardous design.  See id., ¶¶ 86–89.  Plaintiff is employed by Pall Trinity Micro Division of Pall Corporation, which is located in Cortland, New York.  Plaintiffs brought suit, first against Roundo AB ("Roundo") and second against Comeq, Inc. ("Comeq").  See Dkt. No. 1, 10.  After counsel for Defendant Roundo informed Plaintiffs that Luna was the manufacturer of the rolling machine in question, Plaintiffs amended their Complaint to include Luna.  See Pls.' Aff. in Opp'n (Dkt. No. 30,, Ex. A.)  Plaintiffs subsequently amended their complaint to further include Hassleholms Mekaniska AB and the affiliates of Luna, namely Bergman & Beving AB, Luna International, Luna ServicePartner AB, Luna Sverige, and Luna Verktyg.

Plaintiffs are citizens and residents of New York.  See Amended Complaint (Dkt. No. 35) ¶ 1.  Comeq is incorporated in Maryland and maintains its principal place of business in Maryland.  See id.  Roundo and Hassleholms Mekaniska AB are Swedish Corporations that reside and have their principal places of business in Hassleholm, Sweden.  See id., ¶ 2.  Luna, Luna Sverige, Luna Verktyg, Luna International, and Luna ServicePartner AB are all Swedish corporations that reside and have their

---

[1] Although Plaintiffs do not specify that the Roundo Rolls Machine Model #110/3 is of the "IP Type 8266," evidence submitted in opposition to the Foreign Defendants' motion to dismiss shows that the Roundo Rolls Machine Model #110/3 is one of the models in the IP Type 8266 line.  See Pls.' Aff. in Opp'n (Dkt. No. 30, Ex. E).

principal places of business in Alingsas, Sweden.  See id., ¶¶ 3, 5, 6, 8, 9.  Bergman & Beving AB is a Swedish corporation, with its principal place of business in Stockholm, Sweden.  See id., ¶ 4.

## II.     DISCUSSION

### A. Subject Matter Jurisdiction

"It is a fundamental principle that federal courts are courts of limited jurisdiction.  The limits upon federal jurisdiction, whether imposed by the Constitution or by Congress, must be neither disregarded nor evaded."  Owen Equipment & Erection Co. v. Kroger, 437 U.S. 365, 374 (1978).  District courts have jurisdiction over civil actions where: (1) the matter in controversy exceeds $75,000, exclusive of interest and costs; and (2) the action is between "citizens of a State and citizens or subjects of a foreign state."  28 U.S.C. § 1332(a).

It is clear the Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332.  First, the Complaint shows that Plaintiffs' claims each exceed the "amount in controversy" requirement.  Second, diversity exists between Plaintiffs and Defendants.  Plaintiffs are citizens and residents of New York.  See Dkt. No. 35, Compl., ¶ 1.  Defendant Comeq is incorporated and maintains its principal place of business in Maryland.  See id.  Defendants Roundo and Hassleholms Mekaniska AB are Swedish Corporations that reside and have their principal places of business in Hassleholm, Sweden.  See id., ¶ 2.  Defendants Luna, Luna Sverige, Luna Verktyg, Luna International, and Luna ServicePartner AB are Swedish corporations that have their principal places of business in Alingsas, Sweden.  See id., ¶¶ 3, 5, 6, 8, 9.  Defendant Bergman & Beving AB is a Swedish corporation that has its principal place of business in Stockholm, Sweden.  See id., ¶ 4.

### B. Personal Jurisdiction

The Foreign Defendants move to dismiss pursuant to Rule 12(b)(2) of the *Federal Rules of Civil Procedure* for lack of personal jurisdiction. Luna denies that it is the manufacturer of the rolling machine at issue by claiming that the company was neither founded nor registered prior to February 2003. See Dkt. No. 29, First Aff. of Ulf Carlsson, July 12, 2004, ¶ 3. The remaining Foreign Defendants contend that they have (1) not transacted business or derived substantial revenue from business transacted in New York; (2) not engaged in a persistent course of conduct within New York; (3) never registered or sought authorization to do business in New York; (4) never owned any real property or maintained a place of business in New York; and (5) not stationed employees in New York. See Maloney Aff. in Supp. of Mot. to Dismiss (Dkt. No. 60, Attach. 2) ¶¶ 9, 12.

"On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of showing that the court has jurisdiction over the defendant." Metropolitan Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 566 (2d Cir. 1996) (citing Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 507 (2d Cir. 1994)). "In deciding a pretrial motion to dismiss for lack of personal jurisdiction a district court has considerable procedural leeway. It may determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion." Marine Midland Bank, N.A. v. Miller, 664 F.2d 899, 904 (2d Cir. 1981) (citations omitted). "In the absence of a full-blown hearing on the merits, plaintiff need make only a prima facie showing that the court has jurisdiction under a long-arm statute." Visual Sciences, Inc. v. Integrated Communications Inc., 660 F.2d 56, 58 (2d Cir. 1981) (citation omitted). When a court's jurisdiction is challenged prior to full discovery on the issue of personal jurisdiction, the plaintiff is only required to make a prima facie showing of *in personam* jurisdiction by pleading in

good faith legally sufficient allegations. See Nascimentos v. Fox Lorber Associates, Inc., 1993 WL 183685, at *2 (S.D.N.Y. 1993) (quoting Ball v. Metallurgie Hoboken-Overpelt, S.A., 902 F.2d 194, 197 (2d Cir. 1990), cert. denied, 498 U.S. 854 (1990)). "A plaintiff can make this showing through his own affidavits and supporting materials containing an averment of facts that, if credited, would suffice to establish jurisdiction over the defendant." Whitaker v. American Telecasting, Inc., 261 F.3d 196, 208 (2d Cir. 2001) (internal quotation marks and citations omitted); see also Yellow Page Solutions, Inc. v. Bell Atl. Yellow Pages Co., 2001 WL 1468168, at *1 (S.D.N.Y. Nov. 19, 2001); Pilates, Inc. v. Pilates Inst., Inc., 891 F. Supp. 175, 178, n. 2 (S.D.N.Y. 1995). The Court must resolve all doubts and construe all pleadings, affidavits, and other supporting materials in the light most favorable to Plaintiff, as the non-moving party. See CutCo Indus., Inc. v. Naughton, 806 F.2d 361, 365 (2d Cir. 1986). In the Second Circuit, district courts have allowed jurisdictional discovery where a plaintiff has made "a sufficient start toward establishing personal jurisdiction." Uebler v. Boss Media, 363 F. Supp.2d 499, 506 (E.D.N.Y. 2005) (internal quotation marks and citation omitted); see also Smit v. Isiklar Holding A.S., 354 F. Supp.2d 260, 263 (S.D.N.Y. 2005) ("[A] court may order limited discovery targeted at the missing jurisdictional elements, if plaintiff has shown that such an exercise would serve to *fill any holes* in its showing.") (emphasis in original) (internal quotation marks and citation omitted).

"'[T]he amenability of a foreign corporation to suit in a federal court in a diversity action is determined in accordance with the law of the state where the court sits.'" Ball, 902 F.2d at 198 (quoting Arrowsmith v. United Press International, 320 F.2d 219, 233 (2d Cir. 1963) (en banc)) (alteration in original). Plaintiffs have specifically invoked New York Civil Practice Law and Rules § 302(a)(3) as the basis for personal jurisdiction over the Foreign Defendants. See Amended Complaint (Dkt. No. 35) ¶¶ 3–6, 8–9. Section 302(a)(3) gives a court personal jurisdiction over a non-

domiciliary if it "commits a tortious act without the state causing injury to person or property within the state . . . ." N.Y. C.P.L.R. § 302(a)(3). To satisfy § 302(a)(3), a plaintiff must demonstrate: (1) a tortious act outside of New York; (2) injury in New York; and either (3)(i) that a defendant regularly does or solicits business, engages in persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in New York; or (3)(ii) that a defendant expected or reasonably should have expected its acts to have consequences in New York and the defendant derives substantial revenue from interstate or international commerce. Id.

First, Plaintiffs allege that the Foreign Defendants committed a tortious act outside of New York (the manufacture of a defective or unreasonably dangerous rolling machine) that caused injury to Plaintiffs within New York.[2] See Amended Complaint (Dkt. No. 35) ¶¶ 3–6, 8–9. There is some confusion as to which Defendant is responsible for the manufacture of the rolling machine.

The Foreign Defendants deny manufacturing the subject machine, and therefore, contend that they did not commit any tortious act. Maloney Aff. (Dkt. No. 29 ) ¶ 13. Luna submitted the affidavit of Ulf Carlsson ("Carlsson"), wherein Carlsson claims Luna AB was not founded or registered prior to February 2003 and as a result could not have manufactured the machine in question. See First Aff. of Ulf Carlsson (Dkt. No. 29) ¶ 3. However, Luna's allegations that it was not in existence before 2003 conflict with evidence submitted by Plaintiffs, by Defendants Roundo and Comeq, and even by the Foreign Defendants.

---

[2] Plaintiffs also allege that the Foreign Defendants committed a tortious act inside New York, see Amended Complaint (Dkt. No. 35) ¶¶ 21–24, 26–28, which would provide grounds for jurisdiction pursuant to N.Y. C.P.L.R. § 302(a)(2). However, Plaintiffs have not invoked § 302(a)(2) as a basis for jurisdiction. Furthermore, while the evidence in the record supports the Foreign Defendants' involvement in the manufacture of the machine in question, there has been no showing that the Foreign Defendants performed any tortious act within New York State.

According to documents taken from Luna's website, www.luna.se, which outline Luna's historical development, Luna was founded in 1917.  See Pls.' Aff. in Opp'n (Dkt. No. 30, Ex. G–I); see also, Aff. of Goran Andersson, July 18, 2005 (Dkt. No. 60) ¶ 3; Second Aff. of Ulf Carlsson, July 13, 2005, ¶ 3; Third Aff. of Ulf Carlsson, July 13, 2005, ¶ 3.  A corporate organizational chart of Luna shows that Luna is the parent company of Luna Sverige, Luna Verktyg, Luna International, and Luna ServicePartner AB.  See Pls.' Aff. in Opp'n (Dkt. No. 30, Ex. G); see also Id., Ex. K, Aff. of Gunvor Johanson, Nov. 5, 1997, ¶ 2 (stating that Luna Sverige was formerly known as "Luna AB").  These companies are all considered part of the "Luna Group," and they share the same telephone and facsimile numbers, e-mail domain name, and websites.  See id.  Gert Karlsson states in his affidavit that prior to 1988 and after 1998 "Luna International AB" went by "Anders Petter AB."  See Aff. of Gert Karlsson, July 19, 2005 (Dkt. No. 60) ¶ 3.  In 1994, the Luna Group was subsumed by Bergman & Beving AB.  See id.  Mats Bjorkman, Executive Vice-President and Chief Financial Officer of Bergman & Beving AB, described Bergman & Beving AB as a holding company which acquired the Luna Group and all of its member-companies in 1994.  See Aff. of Mats Bjorkman, July 14, 2005 (Dkt. No. 60) ¶ 5.

It is clear from the record that Luna has been manufacturing rolling machines, including the Roundo Rolls Machine Model #110/3, for the past twenty years.  See Pls.' Aff. in Opp'n (Dkt. No. 30, Ex. F).  Plaintiffs produced a shipping order dated January 11, 1983 and an invoice dated February 7, 1983, both of which show that Luna and Luna International were involved in the manufacture and distribution of the Roundo Rolls Machine Model #110/3.  See id., Ex. D, E.  Defendant Roundo alleges that the February 7, 1983 invoice specifically involved "the Luna model 8266 machine that was shipped to Comeq, Inc. for ultimate sale and delivery to plaintiff's employer."  Defs. Roundo and

Comeq Aff. in Opp'n (Dkt. No. 33) ¶ 6.  Plaintiffs have also provided a letter sent on June 20, 2003 from Comeq to Pall Trinity Micro Corporation, Plaintiff's employer, which discusses potential safety precautions to be taken with respect to a Model #100/3 IP Type 8266.  <u>See</u> Pls.' Aff. in Opp'n (Dkt. No. 63, Ex. C).  The letter indicates that Roundo marketed and Luna manufactured the machine owned by Plaintiff's employer.  <u>See</u> <u>id.</u>  Furthermore, in a November 2003 Exclusive Distributor Agreement entered into by Comeq and Luna Verktyg, Luna Verktyg identified the model 8266 rolling machine as its product.  <u>See</u> Defs. Roundo and Comeq Aff. in Opp'n (Dkt. No. 33, Ex. 4).

  It appears to be fairly certain that one or more of the Foreign Defendants manufactured the subject rolling machine.  Thus, Plaintiffs have presented a colorable claim that one or more of the Foreign Defendants committed a tortious act outside of New York.  At this time it is unclear which Luna entity actually manufactured the rolling machine.  Given the interrelatedness of the Foreign Defendants and the lack of any discovery to date on this issue, the Court finds that limited discovery is appropriate to determine which, if any, of the Defendants manufactured the rolling machine.

  Second, Plaintiffs alleged injury in New York.  Defendants have not refuted this allegation.

  Third, Plaintiffs allege that each of the Foreign Defendants "engaged in the business of designing, manufacturing, advertising, marketing and selling machinery and in pursuance of this business, transacts business within the State of New York, and contracts to supply goods or services in the State of New York."  <u>See</u> Amended Complaint (Dkt. No. 35) ¶¶ 12–15, 17–18.  Although Plaintiffs seem to be implying § 302(a)(1) as a basis for jurisdiction, this conclusory statement alone is insufficient to find that the Foreign Defendants transacted business or contracted to supply goods or services in New York.  Although the record shows that the Foreign Defendants contracted to supply goods throughout the United States, it is presently unclear whether the Foreign Defendants contracted

to supply goods or services specifically to New York State. The issue, therefore, is whether Defendants should have reasonably expected its acts to have consequences in New York and they derive substantial revenue from interstate or international commerce.

Under § 302(a)(3)(ii), Plaintiffs must show that the Foreign Defendants "expect[ed] or should [have] reasonably expect[ed] the act to have consequences in the state and derive[d] substantial revenue from interstate or international commerce." The "reasonable expectation" requirement "is intended to ensure some link between a defendant and New York State to make it reasonable to require a defendant to come to New York to answer for tortious conduct committed elsewhere." Ingraham v. Carroll, 687 N.E.2d 1293, 1296 (1997). Although it is not required that a defendant foresee the specific event that produced the alleged injury, the defendant must "reasonably foresee that any defect in its product would have direct consequences within the State." LaMarca v. Pak-Mor Mfg. Co., 735 N.E.2d 883, 886 (2000). However, foreseeability alone is not enough for jurisdiction. "To serve as a basis for jurisdiction, foreseeability must be coupled with a purposeful act invoking the benefits and protections of New York law." Cortlandt Racquet Club, Inc. v. Oy Saunatec, Ltd., 978 F. Supp. 520, 523 (S.D.N.Y. 1997) (citations omitted).

It is clear from the record that the Foreign Defendants are engaged in both interstate and international commerce and derive a substantial amount of revenue therefrom. Luna opened its doors to North American markets on or before January 1, 1983. See Defs. Roundo and Comeq's Aff. in Opp'n (Dkt. No. 33, Ex. 2, 3). In August 1983, Luna International and Roundo entered into a formal agreement whereby Luna International granted Roundo exclusive sales rights in the United States for its metal bending machines. See, Pls.' Aff. in Opp'n (Dkt. No. 30, Ex. K); see also Aff. of Gunvor Johanson, ¶ 3. Defendant Roundo alleges that Roundo, Luna, and the other named Luna corporate

entities have a "long and ongoing history of commercial dealings involving the sale and delivery to the United States of approximately 750 Luna roller machines." Def. Roundo's Aff. in Opp'n (Dkt. No. 64) ¶ 5. In support of this allegation, Defendant Roundo has produced three related documents: (1) an email sent from Luna to Comeq on June 28, 2004; (2) a fax sent from Comeq to Luna on July 9, 2004; and (3) a standardized letter sent on December 22, 2004 from Comeq to an owner and operator of a Roundo Rolls Machine Model #110/4 IP Type 8266. See Defs. Roundo and Comeq Aff. in Opp'n (Dkt. No. 33, Ex. 1, 7, 8). In the email, Luna acknowledged problems arising from rolling machines produced between 1981 and 1986 and proposed a safety program to deal with such problems. See Defs. Roundo and Comeq Aff. in Opp'n (Dkt. No. 33, Ex. 7). The fax, sent in response to Luna's email, detailed the safety program proposal regarding 750 Luna machines–178 of which were IP Type 8266 sold between 1981 and 1986–shipped to the United States over the past twenty-five years. See id., Ex. 1. The letter, which was approved by Luna and sent by Comeq to the owner and operator of a Roundo Rolls Machine Model #110/4 IP Type 8266, explicitly states "[t]his machine was marketed under the Roundo brand name and *manufactured by Luna AB* of Alingsas, Sweden." Id., Ex. 8 (emphasis added)[3]. The Foreign Defendants also derive a substantial amount of revenue from international trade. The above mentioned letter from January 1, 1983 demonstrates that the Foreign Defendants granted Defendant Roundo the rights to sell Luna's machines to Greece, Italy, Portugal, Spain, Great Britain, Eastern Europe, Australia, South East Asia, India, South America, and Africa. See id., Ex. 2, 3.

---

[3] This statement highlights the difficulties in determining which of the various entities manufactured the subject rolling machine.

To support their claims that the Foreign Defendants should have reasonably expected to be subject to New York jurisdiction, Plaintiffs and the non-moving Defendants direct the Court's attention to the November 11, 2003 Exclusive Distributor Agreement made between Luna Verktyg and Comeq. See Defs. Roundo and Comeq Aff. in Opp'n (Dkt. No. 33, Ex. 4). The agreement was signed by Comeq's Chief Executive Officer, Allan Flamholz ("Flamholz"), and Luna Verktyg's Director of the Board, Carlsson, who is also the Managing Director of Luna and the Director of the Board Luna Sverige. Article 13 of the agreement, "Applicable Law and Disputes," expressly states: "This Agreement shall be governed by, and construed in accordance with State of New York, United States of America [sic]." That document also invokes the "Aribtration Act of the State of New York" and provides that "arbitration proceedings shall be held in New York, in the State of New York, United [S]tates of America." Id. In his affidavit, Flamholz stated that "[a]lthough Comeq does not maintain offices in New York, it actively markets Luna products to potential customers in New York through telephone contacts, mailings and in-person meetings." Dkt. No. 63, Pls.' Aff. in Opp'n, Ex. I, Aff. Of Allan Flamholz, Apr. 22, 2005, ¶ 15. According to Flamholz, "[s]ince 1981, Comeq has sold fifteen (15) Luna bending machines to customers in New York." Id. Furthermore, Flamholz noted that under Article 8 of the Agreement, Luna Verktyg "warranted the fitness of machines delivered to end customers by Comeq," "agreed to assume the costs of repairing or replacing machines sold to Comeq's customers," "agreed to indemnify and hold Comeq harmless against any claim arising out of allegations that its products are defective," and "agreed to maintain general liability and product liability insurance coverage." Id., ¶¶ 12–13.

The Exclusive Distributor Agreement demonstrates that Luna Verkty may have purposefully availed itself of the benefits of New York law. Although the Exclusive Distributor Agreement was

entered into after Plaintiff's accident occurred, the Agreement gives color to Plaintiffs' allegations of foreseeability and purposeful availment.  Furthermore, Flamholz's affidavit provides support for Plaintiffs' allegations that the Foreign Defendants expected or reasonably should have expected their acts to have consequences in New York.  Given the lack of discovery in this case to date, it is unclear whether, at the time of Plaintiff's injury, Defendants should have reasonably expected its acts to have consequences in New York or whether it purposefully availed itself of the law of the State of New York.

Due to the present disparities and ambiguities in the record, Plaintiffs' allegations, which must presently be construed in their favor, see CutCo Indus., Inc., 806 F.2d at 365, make "a sufficient start toward establishing personal jurisdiction." Uebler v. Boss Media, 363 F. Supp.2d 499, 506 (E.D.N.Y. 2005) (internal quotation marks and citation omitted).  A court should grant jurisdictional discovery "'where pertinent facts bearing on the question of jurisdiction are controverted . . . or where a more satisfactory showing of the facts is necessary.'" Pension Committee of University of Montreal Pension Plan v. Banc of America Securities, LLC, 2006 WL 708470, at *6 (S.D.N.Y. Mar. 20, 2006) (quoting Kilpatrick v. Texas & Pac. Ry. Co., 72 F. Supp. 635, 638 (S.D.N.Y. 1947), rev'd on other grounds, 166 F.2d 788 (2d Cir. 1948)); see also Smit, 354 F. Supp.2d at 263.  There is enough evidence in the record to suggest that Plaintiffs may be able to demonstrate that it would be appropriate for this Court to exercise jurisdiction over one or more of the Foreign Defendants.  However, the reasonableness of the burden that the exercise of jurisdiction would impose on the Foreign Defendants is unclear due to the sparse factual record.  Because the elements required to determine personal jurisdiction in this case are fact-intensive, see In re Magnetic Audiotape Antitrust Litig., 334 F.3d 204, 207–08 (2d Cir. 2003), the Court deems it appropriate to deny the motion to dismiss for lack of

personal jurisdiction without prejudice, pending further discovery. Therefore, Plaintiffs are granted ninety (90) days to conduct discovery limited to the issue of personal jurisdiction as it relates to the Foreign Defendants' relationship to New York State, the Foreign Defendants' individual roles in the manufacturing of the machine in question, and whether the exercise of personal jurisdiction over the Foreign Defendants would comport with due process. The Foreign Defendants' motion may be renewed following discovery. See FED. R. CIV. P. 12(d); see also Darby v. Compagnie Nat. Air France, 735 F. Supp. 555 (S.D.N.Y. 1990).

### C. Failure to State a Claim, Judgment on the Pleadings, and Summary Judgment

Because the Rule 12(b)(2) Motion is denied with leave to renew and the Court may ultimately lack personal jurisdiction over the Foreign Defendants, the Court cannot now address the Foreign Defendants' Motion to dismiss for failure to state a claim upon which relief can be granted, Motion for judgment on the pleadings, and Motion for summary judgment.[4]

### III.    CONCLUSION

Based on the foregoing discussion, it is hereby

**ORDERED**, that the Motion to dismiss pursuant to Rule 12(b)(2) is **DENIED WITHOUT PREJUDICE WITH LEAVE TO RENEW** after limited discovery has been completed; and it is further

---

[4] In any event, the Foreign Defendants' motion for summary judgment would be denied for failure to comply with Northern District of New York Local Rule 7.1(a)(3). Under Local Rule 7.1(a)(3), "[f]ailure of the moving party to submit an accurate and complete Statement of Material Facts shall result in a denial of the motion." The Foreign Defendants' submission does not set out each material fact in a separate and numbered paragraph supported by a citation to where in the record the fact is established. Accordingly, the motion fails to conform to Local Rule 7.1(a)(3).

**ORDERED**, that the Foreign Defendants' Motion to dismiss for lack of subject matter jurisdiction is **DENIED**; and it is further

**ORDERED**, that all remaining motions are **DENIED WITHOUT PREJUDICE** as premature; and it is further

**ORDERED**, that the Clerk serve a copy of this Order on the parties.

**IT IS SO ORDERED**.

DATED: August 28, 2007
          Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge